IN THE TWENTY-FIRST JUDICIAL CIRCUIT
STATE OF MISSOURI

TALIAH WHITFIELD, }
        Plaintiff, }
}
v. } Cause No. 13SL-CC_____
}
DILLARDS DEPARTMENT STORE, }
FELICIA REUM, LARRY BEERMAN, } Division No. ____
DAVID BRENNAN, & JAMES BOWIE, }
} JURY TRIAL DEMANDED
        Defendants. }

## PETITION

COMES NOW Taliah Whitfield, by and through counsel, Rufus J. Tate, Jr., and for her Petition states the following:

*Parties*

1) Taliah Whitfield ("Plaintiff") was at all pertinent times herein an African-American customer of Dillards Department Store ("Dillards");

2) Defendant Felicia Reum ("Reum") was at all pertinent times herein a Caucasian-American Dillards' employee. She is sued in her individual capacity as well as her employee capacity under the doctrine of *respondeat superior*;

3) Defendant Larry Beerman ("Beerman") was at all pertinent times herein a Caucasian-American and the Chief of Dillards' Security. He is sued in his individual capacity as well as his employee capacity under the doctrine of *respondeat superior*;

4) Defendant David Brennan ("Brennan") was at all times herein a Causcasian-American and a City of Richmond Heights police officer working private duty as a Dillards' security officer. He is sued in his individual capacity as well as his employee capacity under the doctrine of *respondeat superior*;

1

5) Defendant James Bowie ("Bowie") was at all times herein a Caucasian-American and City of Richmond Heights police sergeant working private duty on the Dillards' security detail. He is sued in his individual capacity as well as his employee capacity under the doctrine of *respondeat superior*;

*Venue*

6) Venue is appropriate in the judicial circuit because all acts and/or omissions complained of occurred herein;

*Subject-matter Jurisdiction*

7) This Court has subject-matter jurisdiction over all the statutory and common-law claims alleged herein pursuant to MO. Const. art. V, § 14;

*Common Factual Allegations*

8) Plaintiff was waiting patiently to pay for the merchandise she desired at Reum's cash register;

9) Although Plaintiff had waited her turn, Reum took another Caucasian-American customer ahead of Plaintiff. Plaintiff had been waiting in line before the other customer arrived in line;

10) Because Reum displayed an apparent racial prejudice, Plaintiff respectfully requested to speak to Reum's manager;

11) Instead of summoning her manager, Reum took offense, and summoned Dillards' security;

12) When security officer Brennan arrived, Reum can be observed on video surveillance gently rubbing Brennan's back before sending him to eject Plaintiff from the premises;

2

13) Reum concocted a story that Plaintiff had become physically aggressive with her and had also articulated some racial epithets at the customer whom Reum had taken ahead of Plaintiff;

14) Before Brennan approached Plaintiff, he had already summoned other security officers to meet him at the designated exit door;

15) When Brennan approached Plaintiff, he conducted no investigation of the allegations of any crime or ordinance violation;

16) Brennan instead ordered Plaintiff to put down her merchandise and to begin walking toward the designated exit;

17) Plaintiff immediately complied with Brennan's order without incident;

18) Brennan and another Dillards' security officer followed behind Plaintiff, and directed her through the store to the designated exit;

19) Brennan never announced Plaintiff was under arrest;

20) When Plaintiff exited the doors, several other security officers grabbed hold of Plaintiff;

21) Plaintiff did not knowingly resist any arrest order;

22) Two Dillards' security officers had physical control of each of Plaintiff's arms and had her facing against an exterior wall;

23) At that time, Plaintiff posed absolutely no danger to any one;

24) Regardless, Defendant Bowie discharged his TASER in Plaintiff's back with such force as to temporarily disable her causing her to fall to the ground and to urinate on herself;

## Count I
## Denial of Contractual Rights

34) Plaintiff was a member of a protected class: African-American;

35) Plaintiff demonstrated an interest in purchasing Dillards' merchandise by standing in line at the cash register until it was her turn to pay;

36) In connection with her attempt to consummate her contractual relationship, Reum impaired or interfered with the contract by passing over Plaintiff for a Causcasian-American who entered line after Plaintiff;

37) When Plaintiff complained about the slight and asked Reum to summon her manager, Reum retaliated against Plaintiff by summoning security and concocting a story of racial divisiveness in an attempted to have Plaintiff arrested;

38) Reum attempted to chill Plaintiff's First Amendment right to complain to management by suppressing any opportunity for Plaintiff to communicate with Dillards' management, and to ensure that Plaintiff would never voice another complaint against her for taking a Caucasian-American customer ahead of her;

39) Plaintiff suffered injury, including but not limited to lost wages, pain, humiliation, embarrassment, attorney's fees in collateral litigation, and emotional distress;

40) Exemplary damages are necessary and appropriate because Reum and Brennan's misconduct warrants punishment to deter similar misconduct in the future;

For the foregoing reasons, Plaintiff respectfully requests judgment in her favor and against Reum, Brennan, and Dillards, for compensatory damages, exemplary damages, interest, attorney's fees, costs, and whatever other relief this Court deems necessary and appropriate.

## Count II
## Battery

41) Bowie's TASERING of Plaintiff in her back was unnecessary and unjustified because Plaintiff was in the grips of two other security officers before the TASER was discharged, and Plaintiff's back was to each security officer;

42) Plaintiff did not consent to being TASERED in the back;

43) Bowie has no discretion under law to TASER anyone in the back who does not pose an imminent threat of serious physical injury to himself or others;

For the foregoing reasons, Plaintiff respectfully requests judgment in her favor and against Bowie and Dillards, for compensatory damages, exemplary damages, interest, attorney's fees, costs, and whatever other relief this Court deems necessary and appropriate.

## Count III
## Failure to Protect

44) As chief of security, Beerman was obligated to ensure that Bowie did not TASER Plaintiff or anyone else under inappropriate circumstances;

45) Beerman heard Bowie announce his intent to TASER Plaintiff in her back, and did not intervene or order Bowie to cease and desist;

46) Beerman knew that TASERING Plaintiff under the circumstances was unreasonable.

For the foregoing reasons, Plaintiff respectfully requests judgment in her favor and against Beerman and Dillards, for compensatory damages, exemplary damages, interest, attorney's fees, costs, and whatever other relief this Court deems necessary and appropriate.

Respectfully submitted,

THE TATE LAW FIRM, LLC

_/s/ Tate_
Rufus J. Tate, Jr. 46993
7751 Carondelet Avenue
Clayton, MO 63105
314.726.6495 Office
314.726.0424 Fax
tatelawfirm@gmail.com